1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

RAYMOND MONSON and LEAH MONSON,

9

Plaintiffs,

10

vs.

11

PUGET SOUND GASTROENTEROLOGY, PLLC,

12

Defendant.

13

**NO.**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**JURY DEMAND**

14

COMES NOW, Plaintiffs, Raymond Monson and Leah Monson, by and through their

15

attorneys at Washington Civil & Disability Advocate for their Complaint for Declaratory and

16

Injunctive Relief and Damages to state and allege as follows:

17

**I.      INTRODUCTION**

18

1.      Plaintiff Raymond Monson is a Deaf individual who communicates primarily in

19

American Sign Language ("ASL"), which is his expressed, preferred, and most effective means

20

of communication. Plaintiff Leah Monson is his hearing (i.e. non-deaf) daughter. Defendant

21

discriminated against the Plaintiffs by failing and/or refusing to provide auxiliary aids and

22

services necessary to ensure effective communication with Raymond Monson during both his

23

preoperative visit at Puget Sound Gastroenterology in September of 2019 as well as his visit for

Complaint for Declaratory and Injunctive Relief and Damages
**Page 1 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

the date of the colonoscopy procedure in November of 2019. As a result, Raymond Monson was unable to fully understand his medical conditions or the treatment he received, and Leah Monson was forced to facilitate communication for her father against both of the Plaintiffs' wishes.

2.      Plaintiffs bring this action seeking declaratory, injunctive, and equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and the Washington Law Against Discrimination ("WLAD"), R.C.W. 49.60.030.

3.      Due to physical, environmental, and pedagogical factors, many Deaf individuals, including Raymond Monson, have difficulty comprehending the English language. In fact, the median reading level of Deaf high school graduates averages at fourth grade level. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born Deaf or become Deaf before acquiring language. Commonly, Deaf people acquire English as their second language later in life and well past the critical developmental period of language acquisition. For these reasons, Raymond Monson is an individual with limited English proficiency. Despite this, Defendant did not properly accommodate his disability by providing in-person, qualified ASL interpreters and left Plaintiffs no choice but to rely on Raymond's daughter Leah for communication.

4.      Relying upon family members or other companions to facilitate communication about medical information for Deaf patients is unwise and dangerous because companions are generally too personally and emotionally involved with the Deaf patient to act impartially, and

Complaint for Declaratory and Injunctive Relief
and Damages
**Page 2 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

because they often lack the necessary medical vocabulary. Despite this, Defendant forced Leah Monson, Raymond's daughter and companion at his medical procedures, to facilitate communication in a medical setting instead of properly accommodating Raymond's disability by providing in-person, qualified ASL interpreters.

5.   Video Remote Interpreting (VRI) is a video-telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when there are many people in a room, like during a procedure like a colonoscopy; when there are technical malfunctions; when the patient has other conditions that impair the patient's ability to utilize the device (i.e., if the patient has a visual impairment, is in a lot of pain, or cannot achieve the proper posture); or in situations that are complicated or emergent. As set forth in greater detail below, Defendant's offer of VRI was not a sufficient or appropriate substitute to properly accommodating Raymond's disability by providing qualified ASL interpreters.

6.   Based on Plaintiffs' allegations herein, it is evident that Defendant has failed to implement policies and procedures and to train its employees regarding the civil rights and communication needs of Deaf individuals. Plaintiffs brings this action to compel Defendant to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication and a meaningful opportunity for Deaf individuals and their companions to participate in and benefit from Defendant's health care services. Plaintiffs were denied this opportunity.

## II.   PARTIES

7.   Plaintiff Raymond Monson brings this action and is an individual residing in

Complaint for Declaratory and Injunctive Relief and Damages

**Page 3 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

Washington State. Raymond Monson is a deaf individual who has limited English proficiency and who primarily communicates in American Sign Language. Raymond Monson is limited in the major life activities of hearing and speaking, and is an individual with a disability within the meaning of federal and state civil rights laws.

8.      Plaintiff Leah Monson brings this action and is an individual residing in Washington State. Leah Monson is the hearing (i.e. non-deaf) daughter of Raymond Monson, and was his companion during his two medical visits. Plaintiff Leah Monson is proficient in American Sign Language.

9.      Defendant Puget Sound Gastroenterology, PLLC ("PSG") is a Washington PLLC with a principal place of business located at 21600 Highway 99, Suite 260 in Edmonds, Washington. Defendant PSG owns and operates Puget Sound Gastroenterology clinic. On information and belief Defendant is a recipient of federal funding, including Medicare and/or Medicaid reimbursements.

### III.      JURISDICTION AND VENUE

10.      This court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising in the Constitution, laws, or treaties of the United States.

11.      This court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(4), which gives district courts jurisdiction over actions to secure civil rights under Acts of Congress.

12.      This court has jurisdiction pursuant to 28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over state law claims.

13.      Venue is appropriate in this judicial district under 28 U.S.C. § 1391 because the practices and procedures that gave rise to Plaintiffs' Complaint for Injunctive Relief and

Complaint for Declaratory and Injunctive Relief
and Damages
**Page 4 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1  Damages occurred in this district and Defendant resides within this district.

2                    **IV.    FACTUAL ALLEGATIONS**

3      14.    Plaintiff Raymond Monson sought medical treatment for himself at Puget Sound

4  Gastroenterology on or about September 19, 2019 and November 5, 2019, first for a pre-op visit

5  and then for the colonoscopy procedure.

6      15.    Plaintiff Leah Monson was present as her father's companion at both

7  appointments.

8      16.    Leah Monson is an ASL interpreter, but has never been comfortable facilitating

9  communication for her father in a medical setting because her role in accompanying him is as a

10  patient companion, not a paid interpreter with specific training in medical training.

11      17.    Both Plaintiffs arrived at the PSG together on or about September 19, 2019 and

12  found an interpreter was not present, despite Raymond's request. Plaintiffs impressed upon the

13  medical staff that an in-person interpreter was required for the colonoscopy procedure, and

14  Plaintiffs were told Raymond's file was appropriately noted and they could expect an interpreter

15  at the following visit.

16      18.    In order to avoid being rescheduled, Leah begrudgingly acted as interpreter for

17  the pre-op visit. Plaintiffs left after the pre-op visit frustrated and angry, but with the expectation

18  that the day of the procedure would go smoothly with an in-person interpreter.

19      19.    Several weeks later, on or about November 5, 2019, both Plaintiffs arrived at the

20  clinic together for the colonoscopy operation.  When checking in at the front desk Raymond was

21  informed that there was no interpreter, and that only VRI would be available.

22      20.    Plaintiffs spent several minutes requesting an interpreter be called and trying to

23  determine why one was not present but Defendant's responses were unclear, at best, and

Complaint for Declaratory and Injunctive Relief
and Damages

**Page 5 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   Defendant's only offer was to reschedule the procedure.

2       21.     A colonoscopy requires days of specialized diet and medical preparation (which

3   Raymond had at this point purchased and completed), and Plaintiffs were unwilling to undergo

4   such additional hardship due to PSG's failure to provide an interpreter.

5       22.     Defendant did not provide an interpreter that day, so after several more minutes of

6   explaining why VRI would be inadequate, largely due to the number of people that would be in

7   the room during the operation, Leah Monson was forced to facilitate communication between her

8   father and PSG staff throughout the remainder of the day, which was against both of their

9   expressed wishes.

10      23.     During the lead up to the procedure PSG staff attempted to obtain several

11  signatures from Plaintiffs under dubious or unfair circumstances.

12      24.     Raymond Monson was presented with various medical releases and waivers

13  without complete explanation or without the opportunity to have the contents translated.  After

14  significant protest and repeated explanation that Raymond's first language was ASL, not

15  English, Leah Monson was compelled to translate the forms for her father.

16      25.     Clinic staff attempted to obtain a signature from Leah Monson multiple times

17  listing her as the "working interpreter" for the operation, and persisted in requesting Leah's

18  signature despite her repeated refusals and explanations that she was the patient's companion,

19  not his interpreter.

20      26.     Both Plaintiffs were disrespected and treated poorly by clinic staff, who

21  repeatedly cut-off Leah Monson while speaking and shouting at her.

22      27.     The operation was eventually completed, and Raymond Monson was unable to

23  interpret the results, so Leah Monson was forced to translate one final time before Plaintiffs left

Complaint for Declaratory and Injunctive Relief
and Damages
**Page 6 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1    the clinic.

2        28.    During Raymond Monson's medical treatment at PSG, doctors and nurses

3    repeatedly had discussions with Leah Monson and directed all communication at her, not at

4    Raymond, the patient.

5        29.    During his medical treatment PSG, Raymond Monson was forced to sign

6    documents written in English that he could not fully understand.

7        30.    In most instances during Raymond Monson's medical treatment at PSG,

8    Raymond was unable to communicate effectively with medical staff without the aid of a

9    qualified ASL interpreter (Leah Monson's translation, while mostly effective, was difficult and

10   stressful to both Plaintiffs).

11       31.    Raymond Monson's inability to communicate effectively at PSG caused him to

12   endure frustration, anxiety, humiliation, confusion, and other emotional distress.

13       32.    The difficulty and stress of facilitating communication for her father caused Leah

14   Monson to suffer emotionally and psychologically, both because of the physical and mental

15   demands of doing so, and because she could not maintain a normal relationship with her father

16   during her father's treatment.

17       33.    As a result of Defendant's failure to ensure effective communication with

18   Raymond Monson, Leah Monson was denied the same opportunities that are readily and

19   routinely provided to companions to participate in the care of loved ones.

20       34.    Leah Monson's experience as an unwilling communication facilitator at PSG

21   caused her to experience frustration, anxiety, and other emotional distress.

22       35.    Plaintiffs would each seek Defendant's healthcare services in the future, whether

23   by choice or necessity, but they are deterred from doing so due to the discrimination they have

Complaint for Declaratory and Injunctive Relief
and Damages

**Page 7 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1 | faced and expect to face in the future.

2 | **V.      FIRST CAUSE OF ACTION**
**The Washington Law Against Discrimination**
3 | **R.C.W. §§ 49.60.010 *et seq.***

4 |   36.      Plaintiffs incorporate by reference the allegations in the paragraphs above.

5 |   37.      Plaintiff Raymond Monson is an individual with a disability within the meaning

6 | of the Washington Law Against Discrimination ("WLAD"). RCW § 49.60.040(7)(a)(i).

7 |   38.      Puget Sound Gastroenterology is a place "where medical service or care is made

8 | available" and is thus a place of public accommodation within the meaning of the WLAD. RCW

9 | § 49.60.040(2).

10 |   39.      The WLAD declares: "The right to be free from discrimination because of . . . the

11 | presence of any sensory, mental, or physical disability . . . is recognized as and declared to be a

12 | civil right.  This right shall include, but not be limited to: . . . (b) The right to the full enjoyment

13 | of any of the accommodations, advantages, facilities, or privileges of any place of public resort,

14 | accommodation, assemblage, or amusement . . . " RCW § 49.60.030(1).

15 |   40.      Defendant discriminated against Plaintiff Raymond Monson by not affording him

16 | full and equal access to services at their hospital because of Plaintiff's disability.

17 |   41.      "To make a prima facie case of public accommodation discrimination under the

18 | WLAD, a plaintiff must demonstrate: (1) that he has a disability, (2) that the defendant's place of

19 | business is a public accommodation, (3) that the defendant discriminated against the plaintiff by

20 | providing treatment not comparable to the level of services provided to individuals without

21 | disabilities, and (4) that the disability was a substantial factor causing the discrimination."

22 | *Washington State Commc'n Access Project v. Regal Cinemas, Inc.*, 173 Wash. App. 174, 187,

23 | 293 P.3d 413, 421 (2013).

Complaint for Declaratory and Injunctive Relief
and Damages
**Page 8 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

42.     Defendant provides effective services or treatment to other patients without communications disabilities, and Defendant discriminated against Plaintiff Raymond Monson by failing to provide effective services or treatment to Plaintiff because of Plaintiff's disability.

43.     Defendant intentionally discriminated against Plaintiff Raymond Monson by refusing to provide effective communications to Plaintiff during both the pre-op visit and the procedure, despite Plaintiffs' clear request and explanation of the need for effective communications accommodations.

44.     As a direct and proximate result of Defendant's discriminatory conduct as alleged in this Complaint, Plaintiff Raymond Monson suffered confusion, fear, and isolation.

45.     As a direct and proximate result of Defendant's discriminatory conduct as alleged in this Complaint, Plaintiff Raymond Monson suffered real out-of-pocket monetary damages and mental and emotional distress damages.

46.     RCW § 49.60.030(2) provides that:

Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).

47.     Pursuant to RCW § 49.60.030(2), Plaintiff Raymond Monson is entitled to declaratory and injunctive relief and to recover from Defendant actual damages and her reasonable attorneys' fees and costs incurred in bringing this action.

## VI. SECOND CAUSE OF ACTION
### Title III of the ADA
### 42 U.S.C. § 12181, et seq.

48.     Plaintiffs incorporate by reference the allegations in the paragraphs above.

Complaint for Declaratory and Injunctive Relief
and Damages
**Page 9 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

49.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq., has been in full force and effect and has applied to Defendant's conduct.

50.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to Defendant's conduct.

51.     At all times relevant to this action, Plaintiff Raymond Monson has been substantially limited in the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

52.     Defendant owns, leases, and/or operates a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(D).

53.     Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

54.     Title III of the ADA provides that "It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

55.     Title III of the ADA defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services,

Complaint for Declaratory and Injunctive Relief
and Damages
**Page 10 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   segregated or otherwise treated differently than other individuals because of the absence of

2   auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

3       56.     Federal regulations implementing Title III of the ADA provide that "[a] public

4   accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure

5   effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

6       57.     Federal regulations implementing Title III of the ADA provide that "[A public

7   accommodation shall not rely on an adult accompanying an individual with a disability to

8   interpret or facilitate communication, except – (i) In an emergency involving an imminent threat

9   to the safety or welfare of an individual or the public where there is no interpreter available; or

10  (ii) Where the individual with a disability specifically requests that the accompanying adult

11  interpret or facilitate communication, the accompanying adult agrees to provide such assistance,

12  and reliance on that adult for such assistance is appropriate under the circumstances." 28 C.F.R.

13  § 36.303(c)(3).

14      58.     Federal regulations implementing Title III of the ADA provide that "[a] public

15  accommodation that chooses to provide qualified interpreters via VRI service shall ensure that it

16  provides – (1) Real-time, full-motion video and audio over a dedicated high-speed, wide

17  bandwidth video connection or wireless connection that delivers high-quality video images that

18  do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2)

19  A sharply delineated image that is large enough to display the interpreter´s face, arms, hands, and

20  fingers, and the participating individual´s face, arms, hands, and fingers, regardless of his or her

21  body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of

22  the technology and other involved individuals so that they may quickly and efficiently set up and

23  operate the VRI." 28 C.F.R. § 36.303(f).

Complaint for Declaratory and Injunctive Relief
and Damages

**Page 11 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

59.     Defendant discriminated against Plaintiffs, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

60.     Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with Title III of the ADA and its implementing regulations.

61.     Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

### VII. THIRD CAUSE OF ACTION
### Section 504 of the Rehabilitation Act
### 29 U.S.C. § 794

62.     Plaintiffs incorporate by reference the allegations in the paragraphs above.

63.     At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

64.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendant's conduct.

65.     At all times relevant to this action, Plaintiff Raymond Monson has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

66.     At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

67.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

Complaint for Declaratory and Injunctive Relief
and Damages
**Page 12 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

68.     The Rehabilitation Act extends relief to "any person aggrieved" by any act or failure to act by any recipient of Federal assistance…under Section 794 of this title . 29 U.S.C. § 794a(a)(2).

69.     Defendant discriminated against Plaintiff Raymond Monson, on the basis of disability, in violation of the Rehabilitation Act and its implementing regulations.

70.     Plaintiff Leah Monson is a "person aggrieved" within the meaning of the Rehabilitation Act because Defendant failed to provide upon Plaintiffs' request an ASL interpreter for Plaintiff Raymond Monson, thereby requiring Plaintiff Leah Monson to serve as interpreter, rather then companion, for her father Plaintiff Raymond Monson.

71.     Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Rehabilitation Act and its implementing regulations.

72.     Plaintiffs are therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

## VIII. FOURTH CAUSE OF ACTION
### Patient Protection and Affordable Care Act
### 42 U.S.C. § 18116

73.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

74.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to the Defendant's conduct.

75.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 1557 of the Patient Protection and

Complaint for Declaratory and Injunctive Relief
and Damages
**Page 13 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1  Affordable Care Act, 45 C.F.R. Part 92, have been in full force and effect and have applied to

2  Defendant's conduct.

3      76.    At all times relevant to this action, Plaintiff Raymond Monson has had substantial

4  limitations to the major life activities of hearing and speaking, and has been an individual with a

5  disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act,

6  42 U.S.C. § 18116.

7      77.    At all times relevant to this action, Plaintiff Raymond Monson's primary language

8  for communication has been American Sign Language (and not English), and he has had limited

9  ability to read, write, speak, or understand English. Plaintiff Raymond Monson has therefore

10  been an individual with limited English proficiency within the meaning of Section 1557 of the

11  Patient Protection and Affordable Care Act, 45 C.F.R. § 92.4.

12      78.    At all times relevant to this action, Defendant received federal financial

13  assistance, including Medicare and/or Medicaid reimbursements, and has been principally

14  engaged in the business of providing health care. Therefore, Defendant is a health programs or

15  activities receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

16      79.    Pursuant to Section 1557 of the Patient Protection and Affordable Care Act, "an

17  individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of

18  1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be

19  subjected to discrimination under, any health program or activity, any part of which is receiving

20  Federal financial assistance." 42 U.S.C. § 18116.

21      80.    Federal regulations implementing Section 1557 of the Patient Protection and

22  Affordable Care Act provide that "[a] covered entity shall take reasonable steps to provide

23

Complaint for Declaratory and Injunctive Relief
and Damages

**Page 14 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1  meaningful access to each individual with limited English proficiency eligible to be served or

2  likely to be encountered in its health programs and activities." 45 C.F.R. § 92.201(a).

3      81.    Federal regulations implementing Section 1557 of the Patient Protection and

4  Affordable Care Act provide that "(1) A covered entity shall offer a qualified interpreter to an

5  individual with limited English proficiency when oral interpretation is a reasonable step to

6  provide meaningful access for that individual with limited English proficiency; and (2) A

7  covered entity shall use a qualified translator when translating written content in paper or

8  electronic form." 45 C.F.R. § 92.201(d).

9      82.    Federal regulations implementing Section 1557 of the Patient Protection and

10  Affordable Care Act provide that "[a] covered entity shall not . . . rely on an adult accompanying

11  an individual with limited English proficiency to interpret or facilitate communication, except:

12  (i) In an emergency involving an imminent threat to the safety or welfare of an individual or the

13  public where there is no qualified interpreter for the individual with limited English proficiency

14  immediately available; or (ii) Where the individual with limited English proficiency specifically

15  requests that the accompanying adult interpret or facilitate communication, the accompanying

16  adult agrees to provide such assistance, and reliance on that adult for such assistance is

17  appropriate under the circumstances." 45 C.F.R. § 92.201(e).

18      83.    Federal regulations implementing Section 1557 of the Patient Protection and

19  Affordable Care Act provide that "[a] covered entity that provides a qualified interpreter for an

20  individual with limited English proficiency through video remote interpreting services in the

21  covered entity's health programs and activities shall provide: (1) Real-time, full-motion video

22  and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection

23  that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy

Complaint for Declaratory and Injunctive Relief
and Damages

**Page 15 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1  images, or irregular pauses in communication; (2) A sharply delineated image that is large

2  enough to display the interpreter's face and the participating individual's face regardless of the

3  individual's body position; (3) A clear, audible transmission of voices; and (4) Adequate training

4  to users of the technology and other involved individuals so that they may quickly and efficiently

5  set up and operate the video remote interpreting." 45 C.F.R. § 92.201(f).

6      84.    Federal regulations implementing Section 1557 of the Patient Protection and

7  Affordable Care Act provide that "[a] covered entity shall take appropriate steps to ensure that

8  communications with individuals with disabilities are as effective as communications with others

9  in health programs and activities." 45 C.F.R.§ 92.202(a).

10     85.    Federal regulations implementing Section 1557 of the Patient Protection and

11  Affordable Care Act provide that "(1) A [covered] entity shall furnish appropriate auxiliary aids

12  and services where necessary to afford individuals with disabilities, including applicants,

13  participants, companions, and members of the public, an equal opportunity to participate in, and

14  enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining

15  what types of auxiliary aids and services are necessary, a public entity shall give primary

16  consideration to the requests of individuals with disabilities. In order to be effective, auxiliary

17  aids and services must be provided in accessible formats, in a timely manner, and in such a way

18  as to protect the privacy and independence of the individual with a disability." 45 C.F.R.§

19  92.202(a); 28 C.F.R. § 35.160(b).

20     86.    Federal regulations implementing Section 1557 of the Patient Protection and

21  Affordable Care Act provide that "[a] covered entity shall not exclude from participation in,

22  deny the benefits of, or otherwise discriminate against an individual or entity in its health

23  programs or activities on the basis of the race, color, national origin, sex, age, or disability of an

Complaint for Declaratory and Injunctive Relief
and Damages
**Page 16 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1  individual with whom the individual or entity is known or believed to have a relationship or

2  association." 45 C.F.R. § 92.209.

3        87.    As set forth above, Defendant discriminated against Plaintiffs, on the basis of

4  disability, in violation of the Patient Protection and Affordable Care Act and its implementing

5  regulations.

6        88.    The Patient Protection and Affordable Care Act, by incorporating the enforcement

7  mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by

8  discrimination in violation thereof. 42 U.S.C. § 18116(a).

9        89.    Defendant has failed to implement policies, procedures, and training of staff

10  necessary to ensure compliance with the Patient Protection and Affordable Care Act.

11        90.    Plaintiffs are therefore entitled to injunctive relief; attorney's fees, costs, and

12  disbursements; and compensatory damages for the injuries and loss they sustained as a result of

13  Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant

14  to 42 U.S.C. § 18116(a).

15                  **IX.    PRAYER FOR RELIEF**

16        WHEREFORE, Plaintiffs respectfully request that this Court:

17  1.  Assume jurisdiction over this action;

18  2.  Find and declare Defendant PUGET SOUND GASTROENTEROLOGY, PLLC to be in

19      violation of the Washington Law Against Discrimination, because Defendant does not

20      comply with state and federal accessibility laws and regulations;

21  3.  Issue an injunction forbidding Defendant from implementing or enforcing any policy,

22      procedure, or practice that denies deaf or hard of hearing individuals meaningful and

23      effective access to and full and equal enjoyment of Defendant's facilities, services, and

Complaint for Declaratory and Injunctive Relief
and Damages

**Page 17 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

programs;

4.  Issue and injunction ordering Defendant:

    a.  to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendant;

    b.  to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly marked and worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

    c.  to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that some methods like video relay interpreter services, are not appropriate in all medical situations;

    d.  to develop, implement, promulgate, and comply with a policy to ensure, in the event the an in-person interpreter is scheduled but, for whatever reason, will not be present, patients are immediately notified;

    e.  to create and maintain a list of sign language interpreters and ensure availability of such interpreters during all hours of operation;

    f.  to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, the Rehabilitation

Complaint for Declaratory and Injunctive Relief and Damages
**Page 18 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

Act, the ACA, and the Washington Law Against Discrimination;

5.      Award Plaintiffs:

    a.   Compensatory Damages pursuant the Washington Law Against Discrimination;

    b.   Reasonable costs and attorneys' fees pursuant to the ADA, the Rehabilitation Act, the ACA, and the Washington Law Against Discrimination;

    c.   Interest on all amounts at the highest rates and from the earliest dates allowed by law.

6.      Award such additional or alternative relief as may be just, proper, and equitable.

DATED THIS 24th day of June, 2020

By:

_s/ Conrad Reynoldson_                                     _s/ Jill Sulzberg_
Conrad Reynoldson                                          Jill Sulzberg
WSBA# 48187                                                WSBA# 55946
conrad@wacda.com                                           jill@wacda.com
(206) 876-8515                                             (206) 971-1124


WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 ROOSEVELT WAY NE, SUITE B, SEATTLE, WA 98105
_Attorneys for Plaintiffs_

Complaint for Declaratory and Injunctive Relief
and Damages

**Page 19 of 19**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558